NICKET, Respondent, v. ST. LOUIS, MEMPHIS & SOUTHERN RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, Submitted February 2, 1909, Opinion filed February 23, 1909.

1. **PRACTICE: Evidence: Harmless Error.** Where a plaintiff was improperly permitted to state that his damage was a certain amount, the error was harmless because the verdict of the jury was for a sum less than the amount stated, showing they did not take into consideration the statement.

2. ———: ———: **Departure.** In an action for damages to plaintiff caused by the overflow of his land on account of a bridge and embankment made by the defendant, where there was no evidence to show that the bridge caused the overflow, but there was evidence to show the embankment caused it, this was not a departure nor a failure of proof.

3. **NUISANCE: Notice to Grantee.** In an action for damages caused by the maintenance by the defendant, a railroad company, of an embankment which amounted to a nuisance in causing the overflow of plaintiff's land, where it was shown the embankment was constructed by the defendant's grantor, the plaintiff could not recover without showing that the defendant knew the embankment which it maintained amounted to a nuisance.

4. ———: ———: **Practice: Consistent Theories.** But where in such case the defendant did not at the trial rely upon the want of notice or base any error upon a failure to prove it, it could not on appeal raise the question for the first time as a new defense.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

AFFIRMED.

*W. F. Evans* and *James Orchard* for appellant.

(1) . The court erred in permitting the plaintiff to testify that the soil was washed away from two or three acres of his land, and that he was damaged by the washing away of this soil in the sum of $500. That is not the measure of damages in a case where there is injury to the freehold, the measure of damages is the difference between the value of the land just before the injury and immediately after. Wiggins v. Railroad, 119 Mo. App. 492. (2) The rule is, as we understand it, that where one alleges certain causes to have produced the injury, the plaintiff is bound by his petition and must recover on that ground or not at all. Trigg v. Land & Lumber Co., 187 Mo. 227. (3) The court should have given defendant's peremptory instruction at the close of all the evidence for another reason, the nuisance, if any, was erected by the Southern Missouri and Arkansas Railroad Company, and not by this defendant. The nuisance having been erected by the Southern Missouri and Arkansas Railroad Company, this defendant would not be liable for the erection and maintenance of the same unless the matter had been brought to its notice prior to the injury. Bobb v. Bobb, 7 Mo. App. 501; Graves v. Railway, 133 Mo. App. 91; Waylan v. Railroad, 75 Mo. 548. Same rule laid down in case of Silver v. Railroad, 101 Mo. 91. George v. Railroad, 40 Mo. App. 443.

*E. R. Lentz* for respondent.

(1) In the first point in their brief, appellant complains that the court committed error in permitting plaintiff to testify that he had been damaged in

the sum of $500 by the washing away of the soil from his land. The error complained of was a harmless error and the rule is well established in this State that the appellate courts will not reverse upon harmless errors. Strike this evidence out; there was still ample evidence to sustain the verdict. Gillespie v. Hendren, 98 Mo. App. 622; Trust Co. v. Matson, 100 Mo. App. 316; Grocery Co. v. Grossman, 100 Mo. App. 338; Alexander v. Wade, 106 Mo. App. 141; Coombs Com. Co. v. Block, 130 Mo. 668. (2) This court will only review such questions as were passed upon in the court below. Burdain v. Trenton, 116 Mo. 358; Gorham v. Railroad Co., 113 Mo. 408; St. Louis v. Sieferer, 111 Mo. 662; Hanniford v. Kansas City, 103 Mo. 172; Rogers v. Gage, 59 Mo. App. 107; Connally v. Shannack Ben. Soc., 43 App. 283. (3) Errors committed at the trial must be called to the attention of the court in motion for a new trial or they will not be noticed by the appellate court. Bartlett v. Veach, 128 Mo. 91; Atkinson v. Dixon, 96 Mo. 582; Griffin v. Dixon, 79 Mo. 75; Ratchford v. Creamer, 65 Mo. 49; Wetherall v. Harris, 51 Mo. 67; Cowen v. Railroad, 48 Mo. 556; Hanks v. Railroad, 60 Mo. App. 274.

REYNOLDS, P. J.—This action was instituted in the circuit court of Butler county. The amended petition upon which the case was tried, after setting out that the respondent is the owner of lands described in it, and that he was such owner at the time of the institution of the suit, avers that Cane Creek is a natural watercourse and a running stream, with well-defined channels and banks, and that it runs through and along the eastern side of the lands of the respondent, the lands bordering on the west bank of Cane Creek for a distance of about a mile. It is then averred that the appellant is a railroad corporation, organized under the laws of this State and owning a line of road running

in close proximity to respondent's land, "and that during the years 1901 and 1902, the defendant was constructing said railroad and constructed the same over and across" Cane Creek a short distance below plaintiff's farm and in so doing negligently and carelessly constructed its road by causing to be built a bridge across Cane Creek with numerous "bents" of piling driven into the creek, and thereby greatly retarding the flow of the water in the creek, causing the same to be dammed and backed up on to the lands of the plaintiff; that there is a deep slough, drain or watercourse, with a channel and bed and well-defined banks, connecting with Cane Creek and leading off in an easterly or southeasterly direction for a distance of nearly a mile, where it connects with a cypress brake of considerable width but with well-defined banks on either side, running in a southeasterly direction, and finally by means of another slough or watercourse, also with well-defined banks, again connecting with Cane Creek several miles further down the stream; that the above-described sloughs, drains or watercourses, in connection with the cypress brake, form a natural watercourse through which the water flows continuously for a large portion of each year, and that with every ordinary freshet, and when the waters in Cane Creek are about half bank full, the waters from the creek flow through the watercourses above described, and during times of high water, more than one-third of the waters of Cane Creek pass off through the watercourses as above described and again find their way into Cane Creek several miles further down the stream, and so afford relief to Cane Creek in discharging surplus water during times of high water; "that the defendant, in constructing its said railroad aforesaid, so carelessly and negligently constructed the same by building a solid embankment over, along and across the said slough, several feet in height, and which said embankment was higher than the west bank of Cane Creek," and that the embankment so

constructed completely obstructed the natural flow of
the water through the slough, drain or watercourse,
and during the rise in Cane Creek, which occurred on
the fifteenth and sixteenth days of December, 1902, the
embankment, "so constructed by defendant," so ob-
structed the outflow of water from Cane Creek and
caused the same to be dammed and backed up, that, in
connection with the obstruction of the flow of waters
in Cane Creek by the negligent and careless construc-
tion of the bridge, caused the waters in the creek to
rise several feet higher than they had ever been known,
and caused the waters of Cane Creek to overflow plain-
tiff's land, thereby washing away the fences on the land
and soaking and washing away his corn then on the
land, and also washing away the soil, all to plaintiff's
damage in the sum of $1,000. The answer, after a gen-
eral denial, avers that on the fifteenth and sixteenth of
December, 1902, and at the time of the alleged injury,
there was an extraordinary freshet, the water being
higher than had been known for years and higher than
has been known since, and, if any damage was occasion-
ed to plaintiff's property, it was by reason of the extra-
ordinary freshet, and not by reason of the construction
or maintenance of defendant's railroad and was un-
avoidable. At a trial of the cause before the court and
jury, the respondent, called as a witness in his own
behalf, testified substantially as follows, as set out in
the abstract prepared by appellant: That he had owned
the land described in the petition for ten years; that
he had known the land fifteen years; that his farm,
that is, the land described in the petition, lies on the
west and south side of Cane Creek, except seven acres
which lies east and southeast of that creek; that ap-
pellant maintained a bridge across the creek below re-
spondent's land; that the bridge was one hundred feet
long where it spans the creek; that there is a drain or
slough that leads off from Cane Creek about one-half
mile above the bridge of appellant, that crosses Cane

Creek and just opposite respondent's land, and on the east side of Cane Creek; that during high water and when there was a rise of four or five feet in Cane Creek, the overflow from Cane Creek went out through this slough or drain; that before appellant's roadbed was built, the overflow ran out through Big Cypress and finally through Yellow Slough, back into Cane Creek further down; that when appellant built the road embankment, it built a solid embankment across this drain or slough, and when water would go through this drain or slough from Cane Creek, it would back up and cause the water to go over respondent's land; that the railroad was built by Southern Missouri & Arkansas Railroad Company, which company sold out to the appellant in the fall of 1902, after the road was constructed; that on December fifteenth and sixteenth, 1902, there was a very heavy rain and the water was two feet over the banks of the creek; that respondent was not at home on the fifteenth but returned on the sixteenth of December, 1902; that when he got home he found the town of Harviell, about one-half mile from Cane Creek, overflowed with water; that the overflow washed away about one-fourth of a mile of plank fence and one-fourth of a mile of picket fence from his land; that there was about three hundred and twenty rods of the fence destroyed, worth thirty-five cents per rod, making $112; that he lost four or five hundred bushels of corn, worth fifty cents per bushel, say four hundred and fifty bushels, making $225; that the soil was washed away from two to three acres of his land; "that he was damaged by this washing of the soil in the sum of $500."

Respondent further testified that on this occasion, the water ran through the drain or slough, and when it got to the railroad embankment that backed it up and caused it to overflow his land; that the railroad embankment finally gave way from the pressure of the water and then the water left his land; that since said high water and damage the railroad company has put in

an opening, where the road or embankment crosses the drain or slough, and the land has not suffered since that time; and that Cane Creek had never overflowed prior to that time since he had known the place.

Witness called on part of the respondent testified substantially to the same effect, except that none of them gave any testimony as to the value of the fencing or corn alleged to have been destroyed, nor to the value of the soil alleged to have been washed away. At the close of all the testimony appellant asked an instruction as follows:

"I. The court instructs the jury that, under the pleadings and all the evidence offered by both plaintiff and defendant, the plaintiff is not entitled to recover, and you will return a verdict for the defendant."

This was refused, the appellant duly saving exception. At the request of the respondent, the court gave two instructions as follows:

"I. The court instructs the jury that if you believe and find from the testimony, that the streams, drains or sloughs described in plaintiff's petition were watercourses within the meaning of and as defined by instruction number two, and that the defendant in constructing its said railroad, so negligently and carelessly constructed its said railroad as to wholly or in part obstruct the natural flow of the water in said streams, sloughs or drains and thereby caused the waters in the said streams, sloughs or drains to be dammed or backed up and thereby causing the same to overflow plaintiff's land and that in consequence thereof plaintiff was damaged or injured as alleged in the petition, then plaintiff is entitled to recover all such damages, not exceeding one thousand dollars, as you may believe from the testimony was caused either directly or approximately by the said careless and negligent acts of the defendant in the construction of its said railroad as aforesaid.

"II. The court instructs the jury that a watercourse in its most comprehensive sense means a course or channel in which water flows. In its legal sense, it consists of bed, banks and water, a living stream confined in a channel, but not necessarily flowing all the time. A stream does not cease to be a watercourse and become mere surface water because at certain points it spreads over a level tract of land and flows for a distance without defined banks before flowing again into a definite channel."

The appellant duly saved exceptions to the giving of these instructions and the jury returning a verdict in favor of respondent for $325, appellant filed motions for new trial and in arrest, which being overruled, it duly perfected its appeal to this court.

The abstract of the testimony presented by appellant is not very satisfactory, in that it hardly enables us to see exactly what took place at the trial of the cause as it took place. But as no exceptions are made to it as an abstract, and no additional abstract has been filed by respondent, we are compelled to do the best we can with it as the case is not here on a full transcript. Taking up the point made that it was error to allow respondent to state what the damage to the soil was—that he should have shown the value of the soil washed away, and not merely state the amount of damage, we notice it appears in the abstract of the testimony of the respondent that he testified, so the abstract sets out, "That there was about 320 rods of the fence destroyed, worth thirty-five cents per rod, making $112; that he lost four or five hundred bushels of corn worth fifty cents per bushel, say four hundred and fifty, making $225; that the soil was washed away from two or three acres of his land and that he was damaged by this washing of the soil in the sum of $500." The abstract then proceeds to set out, "To this question and answer as to the damage to the land, the defendant objected and moved to strike out the question and answer, for

the reason that it was not the measure of damage. Which objection and motion to strike out was by the court overruled. To which the defendant then and there duly excepted." It is impossible to tell from this what the question was. It may have been framed in a proper way and the answer not have been responsive to it. In either event, assuming that he was asked what the damage was by the washing away of the soil and that he answered that it was $500, it is very clear that the appellant was not damaged by the answer, for that the jury did not consider it, and did not accept it as the measure of damage, is shown by their verdict, which was for $325. That amount is less than given by the uncontradicted testimony as the value of the fencing and of the corn. The failure to exclude this answer was, therefore, harmless error.

Exception to the refusal of a peremptory instruction is urged here, based on the claim that the petition lays the injury to the property to the faulty construction of the bridge over Cane Creek, and to the fact that the bridge was insufficient to let the water through and that this had caused them to back up on respondent's property and had thereby injured it, and it is claimed that there is no evidence whatever that the bridge had anything to do with the overflow; that the only evidence is that the overflow was caused by the soil embankment. That is true. It is further claimed by the learned counsel for the appellant, that when one alleges certain causes to have produced the injury, he is bound by these allegations and must recover on those grounds or not at all. That is also good law. But reading the petition on which the case was tried, we find that it distinctly counts both on the bridge and on the embankment as the cause of the damage. Assuming that there was no proof that the bridge alone caused it but that it was caused by the embankment, it is certainly clearly set out in the petition and established by the evidence, that the embankment was one of the causes

of the back-water, and the failure of respondent to prove that both causes contributed to the damage, certainly is neither a departure nor a failure of proof, when the damage could have been or was caused by either alone.

The main objection of the appellant, however, turns on the failure of the court to give a peremptory instruction at the close of the testimony, directing a verdict in favor of appellant, and the argument before us on this rests on the claim that the road was built by the Southern Missouri & Arkansas Railway Co., and not by the appellant, and that before the appellant could be made liable for the maintenance of the nuisance or the obstruction, knowledge of the fact that it was a nuisance or an obstruction, should have been brought home to it. There is no question whatever as to the correctness of this contention as a proposition of law. It has been so decided by this court and by our Supreme Court in several cases. [See Bobb v. Bobb, 7 Mo. App. 501; Graves v. Railroad, 133 Mo. App. 91; Wayland v. Railroad, 75 Mo. 548; Silver v. Railroad, 101 Mo. 79, l. c. 91; George v. Railroad, 40 Mo. App. 433, l. c. 443.] An examination of each of these cases, however, shows that either the petition distinctly averred the fact of notice to defendant in cases where the road was being operated by it, but built by another, when of course the fact of notice was in issue, or, if that was not alleged, then the fact of notice or no notice was distinctly before the court and jury and passed on by appropriate instructions; or the lack of proof of notice was distinctly brought before the trial court by objection specifically founded on that, or, in the motion for new trial or in some other way that fact was clearly called to the attention of the trial court, and distinctly made and passed upon. That was not done in this case. We have read the abstract carefully and are compelled to say, that placing ourselves in the position of the trial court or using that abstract as a mirror reflecting what occurred

in that court, we, and we do not believe any one, would not have imagined that any objection was made to the lack of notice, or to the absence of proof of notice.   It is a thoroughly well-settled rule of practice in our State, that parties cannot lie by and, trying a case presumingly or apparently on one theory, spring a vital point and endeavor to introduce for the first time in this court an entirely new line of defense.   Justice does not lie that way.   [Williams v. Dittenhoefer, 188 Mo. 134, l. c. 142.] The statement in the testimony of the respondent, that the road had been constructed by the former owner in 1902, and that that company had sold out to the appellant in the fall of 1902, was made so incidental, that it may well be that it did not carry any particular significance to the court or jury; as abstracted it shows a contradiction, because he had before then distinctly testified, as shown by the abstract prepared by the appellant itself, that "when the defendant built the road embankment, it built a solid embankment across this drain or slough."   Assuming that one or the other of these statements is incorrect, the jury had a right to assume the truth as to either.   No instruction was asked by the appellant covering this matter of notice, and in no way whatever does it appear to have been called to the attention of the trial court.   We, therefore, disregard this assignment and the argument connected with it, on the distinct ground that it does not appear to have been made in the trial court, and, believing that there was no error committed to the manifest injury of the appellant, affirm the judgment of the lower court. All concur.